IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00815-RJC
(3:14-cr-00164-RJC-1)

| | |
|---|---|
| ROBERTO MENDOZA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence, which is filed pursuant to 28 U.S.C. § 2255. (Doc. No. 1). For the reasons that follow, Petitioner's § 2255 Motion to Vacate will be dismissed.

I.  BACKGROUND

On September 3, 2014, Petitioner was charged by Bill of Information with one count of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count 1), and one count of conspiracy to commit money laundering with proceeds from illegal marijuana sales with the intent to promote the continued unlawful drug activity, in violation of 18 U.S.C. § 1956(h) (Count 2). (3:14-cr-00164, Doc. No. 1).

Petitioner agreed to waive his right to be charged by indictment and entered into a plea agreement with the Government wherein he agreed to plead guilty to Counts 1 and 2

1

in exchange for the Government's agreement to dismiss the charges pending in Case No. 3:13-cr-00018-RJC. Along with the plea agreement, a Factual Basis was filed by the Government in which Petitioner acknowledged there were sufficient facts to support findings of guilt on Counts 1 and 2. (Id., Doc. No. 2: Factual Basis). The Factual Basis provides, in relevant part:

> 6. The Defendant, **Roberto Mendoza**, was involved in a conspiracy that is, a criminal agreement with others – to distribute and to possess with intent to distribute marijuana, and to launder money proceeds of that marijuana trafficking, within Mecklenburg County, within the Western District of North Carolina, in Los Angeles, California, and elsewhere.
>
> 7. During the course of the conspiracy, couriers used commercial air carriers to bring U.S. currency from Charlotte and other areas of the United States to the Los Angeles, California area, in amounts of tens of thousands of dollars per courier per trip, and marijuana from California back to Charlotte and other areas, in amounts of several dozens of pounds per courier per trip.
>
> 8. On January 6, 2011, law enforcement arrested several co-defendants at a house in Monrovia, California, that contained in excess of 200 pounds of marijuana, large capacity electronic scales, packaging material, and several firearms in various parts of the house.
>
> 9. On August 25, 2012, while arresting two fugitives already charged in the conspiracy, law enforcement discovered marijuana, five vacuum sealers (used to package marijuana and sometimes drug proceeds), rolls of plastic wrap (also used for packaging drugs and proceeds), and at least three suitcases (one of which contained vacuum bags), all of which is consistent with the conspiracy's method of packaging and transporting marijuana, as well as a firearm and several phones, at least one of which contained bank account numbers and names. Law enforcement also found Defendant **Mendoza's** identification card. One of the arrestees subsequently agreed to cooperate with the investigation and incriminated Defendant **Mendoza**, whom he knew as **"Monkey,"** as a re-distributor of marijuana in the conspiracy. The cooperator recalled seeing **Mendoza** with 100 pounds or more of marijuana on at least three occasions, and saw **Mendoza** frequently carrying a handgun in his pocket. (The Defendant

objects to the allegation that he possessed firearms during the course of the conspiracy.)

10. Law enforcement learned that Defendant **Mendoza** has banking activity consistent with the money laundering component of the conspiracy: That is, between 9/11/2006 and 9/5/2007, eleven deposits were made into his account ranging from $2,000 to $9,000, for a total of $62,000, in states such as Florida, New York, and Massachusetts. On the same day or slightly after the deposits, 15 cash withdrawals ranging from $648 to $9,000 were removed from the account in California.

11. On May 21, 2014, law enforcement attempted to arrest Defendant **Mendoza** based on the warrant issued along with this indictment. After law enforcement, all of whom wore law enforcement insignia, activated their lights and sirens, **Mendoza** fled at a high rate of speed in his vehicle until he crashed into two parked vehicles. He then fled on foot and evaded law enforcement for approximately three hours, when he was arrested hiding in bushes. He had in his possession three cell phones and approximately $1,403 in U.S. currency. (The Defendant reserves the right to challenge the assertion that the events leading up to his arrest constitute "reckless endangerment during flight" for purposes of U.S. Sentencing Guidelines calculations.)

12. At least four cooperating defendants – whose information has been corroborated to the extent possible, and nothing has been found to be untruthful – have incriminated Defendant **Mendoza** in the conspiracy.

13. Based on the forgoing, the total amount of marijuana and laundered marijuana proceeds equivalent that was reasonably foreseeable to Defendant **Mendoza** was more than one thousand (1,000) kilograms and less than three thousand (3,000) kilograms.

(Id., Doc. No. 17: Presentence Report (PSR).[1]

In the plea agreement, Petitioner stipulated to the following: (1) that the amount of marijuana known to or reasonably foreseeable to him was at least 1,000 kilograms but less than 3,000 kilograms; (2) that Petitioner could contest whether a two-level

---

[1] The PSR includes the above information from Factual Basis and the PSR provides emphasis in bold when identifying Petitioner.

enhancement should apply pursuant to § 2D1.1(b)(1) of the U.S. Sentencing Guidelines Manual (USSG), based on the Government's contention that he possessed a gun during the course of the drug trafficking conspiracy; (3) Petitioner could contest whether a two-level enhancement should apply under USSG § 2S1.1(b)(2)(B) because he was guilty of money laundering while committing a drug offense; and (4) Petitioner could contest whether a two-level enhancement was applicable under USSG § 3C1.2 because Petitioner was reckless in fleeing from officers during a vehicle chase that preceded his arrest and resulted in a car wreck. (Id., Doc. No. 3: Plea Agreement ¶ 8).

On October 7, 2014, Petitioner appeared with counsel for his plea and Rule 11 hearing and he was placed under oath and the elements of the charged counts were explained to him, along with the maximum penalties, and he averred that he understood the charges and he admitted that he was in fact guilty of the charged conduct. Petitioner also averred that he understood and agreed with the contents of his plea agreement, which included his decision to waive his right to contest his conviction or sentence on direct appeal or in a collateral proceeding, except through claims of prosecutorial misconduct and ineffective assistance of counsel. Petitioner swore that he had discussed how the Guidelines might apply to his sentence with his attorney, that he was satisfied with the services of his attorney, and that no one had promised him anything or coerced him regarding his decision to enter into the plea agreement. After answering these questions, Petitioner and his counsel examined the Acceptance and Entry of Guilty Plea form where the court had written down his responses to the questions posed during the hearing, and Petitioner signed the form acknowledging under oath that his answers were true.

Petitioner's guilty plea was accepted after the court found that it was knowing and voluntary and his case was referred to the U.S. Probation Office for preparation of the presentence report. (Id., Doc. No. 7: Acceptance and Entry of Guilty Plea; Doc. No. 35: Rule 11 Tr.).

In the PSR, the probation officer included a base offense level of 30 based on the amount of marijuana involved in the conspiracy, and found the two-level gun enhancement applied because the evidence showed that he possessed a gun during the conspiracy. The probation officer also found that the two-level enhancements should apply for reckless flight from law enforcement, and because Petitioner was convicted of the money laundering offense charged under 18 U.S.C. § 1956. After adjusting for acceptance for responsibility, Petitioner's total offense level was 33, and with a criminal history category of III, Petitioner's Guidelines range was 168-210 months' imprisonment.

On January 28, 2016, Petitioner appeared for his sentencing hearing. The Court first confirmed that his guilty plea was knowing and voluntary after observing there were no objections to the magistrate judge's findings and conclusions on that score. After considering the record of the Rule 11 proceedings, and the parties stipulation that the offense conduct in the PSR supported his plea, the guilty plea was accepted. The Court heard from Petitioner on his objection to the application of the two-level firearm enhancement and concluded that the Government had carried its burden of proving by a preponderance of evidence that the enhancement was applicable. Petitioner's objection to the two-level enhancement for his reckless endangerment during his arrest was also overruled. After considering the parties arguments on the proper sentence, the Court

imposed a below-Guidelines term of 121 months based on Petitioner's history of efforts to assist others, his close family ties, and because his criminal history was overrepresented. (Id., Doc. No. 27: Judgment; Doc. No. 28: Statement of Reasons at 3).

Petitioner appealed his judgment and the Government moved to dismiss the appeal citing his decision to waive his right to contest his conviction or sentence. The Court found that Petitioner's decision to waive his right to appeal his conviction or sentence was knowing and voluntary and that none his arguments fell outside the waiver provision. See United States v. Mendoza, a/k/a Monkey, No. 16-4065 (4th Cir. Aug. 18, 2016). (Id., 38).

In this collateral proceeding, Petitioner raises claims of ineffective assistance of trial counsel that will be addressed herein.

II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. After having considered the record in this matter, the Court finds that no response is necessary from the United States. Further, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

III. DISCUSSION

    A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal

prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can

only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

A. Ground One

Petitioner first contends his trial counsel was ineffective in "allowing" him to sign his plea agreement which included the waiver of a right to a direct appeal of his sentence. Petitioner also maintains that he only signed the agreement on counsel's advice. It is unclear whether Petitioner contends his counsel coerced him into signing the plea agreement or simply allowed him to sign the agreement while not fully explaining the consequences of signing the plea agreement.(3:16-cv-00815, Doc. No. 1: Motion to Vacate at 4). In any event, this argument will be rejected.

During his Rule 11 hearing, the court closely questioned Petitioner on the contents of the appellate waiver in his plea agreement and its impact on his ability to directly appeal his sentence. Petitioner averred that he understood his right to file a direct appeal and that by entering into the plea agreement he would be waiving such appellate rights. The court also confirmed, through Petitioner's sworn statements, that no one had coerced or threatened him into pleading guilty.

It is well-settled that a petitioner is bound by his sworn statements that he makes during a properly conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein, Petitioner's Rule 11 hearing was properly conducted therefore his present challenge must fail. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a

hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

Next, Petitioner contends that but for counsel's error in allowing Petitioner to sign a plea agreement in which he waived his right to a direct appeal, he would have been able to present arguments on appeal regarding errors made by this Court during sentencing. (Motion to Vacate at 4). Petitioner claims he would have challenged the application of the two-level enhancement pursuant to USSG § 2S1.1(b)(2)(B) for money laundering proceeds from a drug conspiracy, contending this enhancement represented impermissible double counting because he was convicted of money laundering under § 1956(h). Petitioner also claims district court error in the application of the two-level enhancements for gun possession during the drug conspiracy and for reckless endangerment during his arrest.

Petitioner knowingly and voluntarily waived his right to challenge his sentence on direct appeal or in a collateral proceeding except, as relevant here, on grounds of ineffective assistance of counsel. To the extent these claims are couched as claims of ineffective assistance of counsel, they are doomed by his plea agreement and his statements averring that he understood and agreed with the terms of his plea agreement. In other words, Petitioner's decision to plead guilty represented a knowing and calculated risk that he worked out with his attorney, and ultimately resulted in a sentence that is likely much lower than if he had foregone a plea agreement and been found guilty after

9

trial. Finally, Petitioner's claim of ineffective assistance of counsel would fail because the application of each of these enhancements were supported by the evidence presented during sentencing.

Further, an argument that a Guidelines calculation is erroneous is generally not cognizable on collateral review notwithstanding the validity of Petitioner's waiver. "The Supreme Court has instructed that only those errors presenting a 'fundamental defect which inherently results in a complete miscarriage of justice" are cognizable.'" United States v. Foote, 784 F.3d 931, 932 (4th Cir.), cert. denied, 135 S. Ct. 2850 (2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).

B. Ground Two

Petitioner contends that his counsel was ineffective in failing to challenge improper, judicial fact-finding that increased his sentence above the mandatory minimum. Petitioner relies on the Supreme Court's holding in Alleyne v. United States, 133 S. Ct. 2151 (2013). (Motion to Vacate at 5).

In Alleyne, the defendant was charged with robbery affecting interstate commerce, among other offenses, in violation of 18 U.S.C. 1951(a), and using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). The jury later convicted Alleyne of the charged offenses. The probation officer prepared a presentence report in advance of Alleyne's sentencing hearing and therein recommended a seven-year sentence based on a finding that he brandished the firearm during the robbery. Alleyne objected on the ground that the jury verdict form made it plain that they did not find beyond a reasonable doubt that he brandished the

firearm during a crime of violence. The sentencing court overruled Alleyne's objection after concluding that whether he brandished the firearm was a question of fact to be resolved by the court in determining the applicable enhancements under the Guidelines, citing Harris v. United States, 536 U.S. 545 (2002). In Harris, the Court held that there was no Sixth Amendment violation of a right to a jury trial when a sentencing court found facts that increased the defendant's mandatory minimum sentence for a crime. Alleyne, 133 S. Ct. at 2155. In overruling Harris, the Alleyne Court found that the Sixth Amendment right to a jury trial was violated because "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Id.

Petitioner's claim of ineffective assistance of counsel will be dismissed for the simple reason that his Count 1 conviction for drug conspiracy did not carry a mandatory minimum term of imprisonment; but rather it carried a term of no more than 20 years in prison. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). Moreover, even if this Court's findings on the amount of marijuana at issue had increased a phantom mandatory minimum sentence, there could be no showing of error because Petitioner stipulated in his plea agreement that he was responsible for at least 1000 kilograms but less than 3000 kilograms of marijuana.

    C.    Ground Three

Here, Petitioner makes one last challenge to the knowing and voluntary nature of his guilty plea. (Motion to Vacate at 7). For the reasons stated, this claim will be dismissed.

IV. CONCLUSION

For the reasons discussed herein, the Court finds that Petitioner's § 2255 motion is without merit and it will be dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate is **DENIED** and **DISMISSED WITH PREJUDICE**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: November 29, 2016

Robert J. Conrad, Jr.
United States District Judge